UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICHELLE C., | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | C.A. No. 23-230MSM |
| | : | |
| MARTIN O'MALLEY, | : | |
| Commissioner of Social Security, | : | |
|     Defendant. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On February 11, 2020, Plaintiff Michelle C., a "younger" individual then living in Pennsylvania,[1] applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Tr. 17. Plaintiff has a GED, attended some college and has worked as a Certified Nursing Assistant ("CNA"). Tr. 47, 71. Claiming onset of disability on January 1, 2019, as amended, Tr. 48, with a date-last-insured of September 30, 2020, Plaintiff's application alleges that she has been mentally disabled by symptoms resulting from bipolar 1 disorder, post-traumatic stress disorder ("PTSD"), major depressive disorder, anxiety, attention deficit [hyperactivity] disorder ("ADHD"), chronic heroin abuse, severe substance use disorder, opioid use disorder, alcohol use disorder and human immunodeficiency virus ("HIV"). Tr. 155. At Step Two, an administrative law judge ("ALJ") agreed that her mental impairments (bipolar disorder, PTSD, major depressive disorder, ADHD and

---

[1] The record reflects that Plaintiff had been living in Pennsylvania for many years but moved back to Rhode Island in 2021. Tr. 68, 802-05, 1992. Plaintiff's medical treatment of record for the period in issue was delivered by providers (e.g., Allies and ARC) in Pennsylvania until August 2021. In early December 2021, Plaintiff had an intake appointment with Tri-County Community Action Agency in Johnston, Rhode Island. Tr. 1992. After that, her care was delivered in Rhode Island. Plaintiff's disability applications were filed and prosecuted in Pennsylvania through the first hearing before a Pennsylvania-based administrative law judge in August 2021. Tr. 17. By the time of that ALJ's second hearing, conducted telephonically in June 2022, and his decision, which issued in July 2022, Plaintiff was living in Rhode Island. Tr. 17, 40, 42.

depression/anxiety) are all severe impairments, but that Plaintiff's substance use disorders[2] and HIV[3] are non-severe.[4]  Tr. 20.  Considering all of Plaintiff's symptoms, the ALJ found that Plaintiff retains the RFC[5] physically to perform a full range of work at all exertional levels, but that mentally she is limited to work involving no more than simple instructions and decision-making, with no interaction with the public, occasional interaction with supervisors and coworkers, no work with production rates or quotas and no more than "frequent" changes in a routine setting.  Tr. 23.  In reliance on a vocational expert ("VE") who opined that Plaintiff could not do her past relevant work, but that there are jobs in the national economy that Plaintiff's RFC permits her to perform, the ALJ found that Plaintiff was not disabled at any relevant time.  Tr. 28-30.

Now before the Court is Plaintiff's motion for reversal of the decision of the Commissioner denying her SSI/DIB applications.  ECF No. 10.  In the motion, Plaintiff contends, first, that the ALJ's RFC is tainted by error because the ALJ failed to develop the record by recontacting a therapist (Matthew Reinhart, LPC) whose treating records were not in the record, despite the ALJ's appropriate reliance on the statements her attorney made at the beginning of the ALJ's hearing ["I do believe that we have everything in the record."], and reiterated at the end of the hearing [in response to ALJ's inquiry whether evidence is complete,

---

[2] For this finding, the ALJ relied on Plaintiff's testimony that, despite documented relapses while she was living in Pennsylvania, but not after she moved to Rhode Island, she has no work-related limitations from her substance use disorders, which have been managed with medically assisted treatment (suboxone).  Tr. 20-21.  This finding is not disputed in this case.

[3] For this finding, the ALJ relied on evidence establishing that HIV is asymptomatic and well controlled with medication.  Tr. 20.  This finding is not disputed in this case.

[4] The ALJ also considered and found non-severe other medically determinable conditions such as hepatitis B and C, obesity and asthma.  These findings also are not disputed.

[5] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

attorney responded, "that is correct."].  Tr. 45, 79.  Second, Plaintiff challenges the ALJ's determination that the consulting examination report of psychologist Dr. Chantal Deines is not persuasive, despite the ALJ's reliance for that finding not only on his own review of substantial medical evidence of record, but also on the administrative findings of the non-examining expert psychologists (Dr. Lisa Marie Cannon and Dr. Douglas Schiller), who carefully analyzed the Deines report and found it "without substantial support from the other evidence of record, which renders it less persuasive."  Tr. 149, 172.[6]  Third, Plaintiff contends that the ALJ erred in finding the opinion of the treating psychiatric nurse, Joseph Albertario, APRN, not persuasive because it is not supported by testing and is inconsistent with Nurse Albertario's own treating records, which reflect that ADHD symptoms improved with treatment.  Finally, Plaintiff contends that the case must be remanded because the VE on whom that ALJ relied at Step Five failed to explain her methodology or source for the number of jobs cited; Plaintiff asks the Court to determine that the VE's answers are insufficient as a matter of law to sustain the Commissioner's Step Five burden and to disregard her attorney's failure to ask the VE any relevant questions during the ALJ hearing.

       Defendant has filed a counter motion for an order affirming the Commissioner's decision.  ECF No. 12.  Both motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     Standard of Review**

       The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant

---

[6] Because Plaintiff filed both DIB and SSI applications, each set of administrative findings is in the record twice.  I cite only to the first iteration.

evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam); Foote v Chater, 67 F.3d 1552, 1560 (11th Cir. 1995). Once the Court concludes that the decision is supported by substantial evidence and that the Commissioner correctly applied the law, the ALJ's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact. See Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30. The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31. "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31.

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015). If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Sacilowski v. Saul, 959 F.3d 431, 433, 440-41 (1st Cir. 2020); Randy M. v. Kijakazi, C.A. No. 20-329JJM, 2021 WL 4551141, at *2 (D.R.I. Oct. 5, 2021).

## II. **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

4

twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505.[7]  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-06, 1509-11.

### A.   The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. § 404.1520(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  20 C.F.R. § 404.1520(g).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 143-44 (D. Mass. 2003) (five-step process applies to SSI and DIB claims).

### B.   Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  The most important factors to be considered when the

---

[7] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, I cite only to one set of these regulations.

Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019).  Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding is with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 404.1520c(c)(1)-(5).  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.

**III.    Analysis and Recommendation**

    **A.    Missing Records of Therapist Matthew Reinhart**

In reliance on a now obsolete regulation, 20 C.F.R. § 404.1512(e),[8] that made it mandatory for an ALJ to "recontact" a treating source in certain circumstances, Plaintiff contends that remand is required because the ALJ failed to "recontact" a therapist (Matthew Reinhart, LPC) whose treating records were not submitted.  See ECF No. 10 at 4-5.  To support the argument, Plaintiff relies on a letter[9] that is buried in the massive medical record procured in

---

[8] See Lindsay B. v. Comm'r of Soc. Sec., CASE # 20-cv-008978, 2021 WL 4912588, at *5 (W.D.N.Y. Oct. 21, 2021) (20 C.F.R. § 404.1512(e) was repealed effective March 26, 2012).
[9] The letter is somewhat enigmatic.  It is addressed to a Dr. Monica Garrick Drago, who does not appear elsewhere in the record.  It informs Dr. Drago that a request for <u>information</u> (not records) about Plaintiff cannot be

connection with Plaintiff's applications. Tr. 1631. The letter is signed by Matthew Reinhart, LPC, who is a therapist apparently affiliated with Allies (Plaintiff's primary care providers while she was living in Pennsylvania) and represents that he provided therapy services to Plaintiff between April 22, 2019, and at least August 3, 2020. Id.

Plaintiff did not list Mr. Reinhart as one of her providers on a submission in support of her application on April 10, 2020; nor, except for a passing reference during her interview with Dr. Deines,[10] as far as the Court can ascertain, did she identify him by name at any other point in connection with her application. However, there are other passing references in the medical record to Mr. Reinhart. Specifically, at May and October 2019 appointments at Allies, there are notations that Plaintiff has a stable mood or is taking medication as prescribed and would be or was "following" with Matthew Reinhart. Tr. 1358, 1400, 1405, 1409. On January 3, 2020, Plaintiff told a provider that she had decided to "not use drugs" and would be "reestablishing care with Matt Reinhart." Tr. 1354. Nevertheless, other than the letter[11] advising a Dr. Drago that he would not provide more information about Plaintiff's medical condition without an appropriate release, Plaintiff correctly argues that no records pertaining to the Reinhart therapy were provided in connection with Plaintiff's applications; nor does the record contain any

---

accommodated until Dr. Drago presents Mr. Reinhart with a proper release of information. Tr. 1631. Based on this letter, Plaintiff somewhat illogically argues that the ALJ was obliged to "**re**contact" Mr. Reinhart. ECF No. 10 at 4. Apart from Plaintiff's mistaken reliance on an obsolete regulation, there is nothing to suggest that Dr. Drago was seeking Plaintiff's treating record in connection with the disability applications. Thus, "**re**contact" would appear to be a misnomer.

[10] Plaintiff told Dr. Deines that she "is currently in outpatient treatment at Allies, with her therapist Matt, since 03/19," but that "[s]he did not have a clear schedule" and the treatment has been at least once a month, "[w]henever I could get in." Tr. 1580.

[11] There is one other letter from Mr. Reinhart, seemingly in support of Plaintiff's request for a support dog. Tr. 1632.

explanation why (if they exist) they were not provided along with the hundreds of other pages of mental health material provided by Allies.

Throughout the period of therapy with Mr. Reinhart (April 2019 to August 2020), Plaintiff was regularly receiving extensive mental health services (including medication, mental status examinations, clinical interviews and substance abuse testing) from her primary care providers at Allies and from the ARS medical professionals who managed Plaintiff's medically assisted treatment (suboxone), as well as occasionally from other providers (e.g., Primary Adult Programs and UPMC Psychiatric Institute). These treating records have been assembled; they total well over seven hundred pages of material. Tr. 856-1693. In addition, the record for the Reinhart therapy period was further developed by the procuring of the report of the consulting examination performed by psychologist Dr. Deines. The record also contains hundreds of pages of medical materials related to mental health from the periods prior to and following the therapy with Mr. Reinhart.

At the first ALJ hearing, Plaintiff was unrepresented but requested that the ALJ go forward with the hearing. Tr. 86-87, 120. During that hearing, the ALJ questioned Plaintiff extensively about where she was getting treatment to ascertain whether the record was complete; he advised that he would procure those additional records that she identified. Tr. 92, 121. During this testimony, Plaintiff never mentioned therapy with Mr. Reinhart. At the second ALJ hearing, Plaintiff appeared with her attorney. Tr. 43. At the beginning of the hearing, the ALJ reviewed the record with the attorney and asked, "do we have all the records relevant to the determination, or are we missing anything? If so, just identify what's missing, and we'll set a timeframe." Tr. 45. The attorney responded, "I do believe that we have everything in the

8

record." Id.  At the end of the hearing, the ALJ engaged in the following colloquy with the attorney:

> ALJ: Mr. Lockhart, is there anything else you think I need to know before we end the hearing?
> ATTY: No, Your Honor.
> ALJ: And you told me the evidence is complete?
> ATTY: That is correct.
> ALJ: All right, so we can end this hearing, close the record.

Tr. 79.  In reliance on the attorney's statement, the hearing closed and the ALJ issued his written decision about a month later.

Despite her affirmative obligation to do so, SSR 17-4P, 2017 WL 4736894, at *1 (Oct. 4, 2017) ("claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability"), Plaintiff has provided no proffer, indeed has presented nothing, regarding the content of the Reinhart therapy notes, if they exist.  Rather, she argues simply that Mr. Reinhart's letter suggests the possibility of an "evidentiary gap" and that the case must be remanded to fill it in.  ECF No. 14 at 2.  In reliance on the obsolete regulation, Plaintiff contends that it is the ALJ, not she, who had a duty to develop the record by "recontacting" this therapist whose treating records were not submitted.  Id.  She asks the Court to remand the case so that whatever may exist can be procured and reviewed by the ALJ and appropriate experts.  With no proffer to suggest that any Reinhart records exist or that they would be materially different from what is contained in the extensive mental health treating records that were provided for the same period, she contends that "this missing information was clearly prejudicial to [her]."[12]  ECF No. 10 at 5.

---

[12] Plaintiff argues that the ALJ's determination that both the Deines report and Nurse Albertario's opinion are unpersuasive is a reason why it is reversible error for the ALJ to have failed to procure the Reinhart records.  ECF No. 10 at 5.  I do not agree.  As to Dr. Deines, whose report is contemporaneous with Mr. Reinhart's therapy, her report is based on a clinical interview and testing, as well as her conclusion that Plaintiff has "obvious difficulties with concentration," Tr. 1584; it was carefully analyzed by both of the non-examining expert psychologists.  These

9

Plaintiff's argument ignores that it is <u>her</u> duty to "inform [SSA] about or submit all evidence known to [her] that relates to whether or not [she is] . . . disabled." 20 C.F.R. § 404.1512(a)(1). Further, with a massive mental health treating record already developed, this is far from being a case where the mental health evidence for the period covered by the Reinhart therapy appointments was insufficient to make the determination that the operative regulation establishes as the predicate to an ALJ's discretionary decision to recontact a treating source. 20 C.F.R. § 404.1520b(b)(2)(i). With no proffer of what Mr. Reinhart's treating notes might say, if any actually exist, I do not recommend that that Court order remand for this reason. As the Commissioner appropriately argues, such a holding would perversely encourage claimants to refrain from full disclosure of all medical providers in a game of wait-and-see how the case turns out. See Pearson v. Fair, 808 F.2d 163, 166 (1st Cir. 1986) (per curiam) ("a party cannot sit silently by, await the entry of judgment, and only then (having seen the result and having been disappointed thereby) bemoan the court's failure to take evidence").

B.  **ALJ's Treatment of Consulting Report of Dr. Deines**

To determine the severity of Plaintiff's attention/concentration limitations, the ALJ resolved the conflict in the expert opinion evidence by adopting the "moderate" findings of the non-examining psychologists and treating as unpersuasive Dr. Deines' opinion of "marked" limitations in the ability to carry out both simple and complex instructions. Tr. 26-27. As his

---

psychologists also had the benefit of the balance of the extensive mental health treating record assembled as of the date of their review. Their RFC findings of moderate attention/concentration limits are based on this review, resulting in their conclusion that Dr. Deines' opinion is only partially consistent with those records and is less persuasive to that extent. Thus, the ALJ's resolution of the inconsistency between the findings of the non-examining expert psychologists and Dr. Deines' more extreme opinion is well grounded in this substantial evidence. See *infra*. Mindful of this substantial evidence, I find that treating the Deines report as unpersuasive does not give rise to an "evidentiary gap." Even less compelling is Plaintiff's argument that the Reinhart therapy notes would fill a gap created by the ALJ's determination to discount Nurse Albertario's opinion, while carefully considering his treating notes. The Albertario period of treatment did not begin until after Plaintiff moved to Rhode Island, many months (or more) after the period of the Reinhart therapy. It is illogical to posit that Mr. Reinhart's treating notes could fill a gap for a period to which they do not pertain.

foundation for this determination, in addition to the non-examining expert findings,[13] the ALJ relied on the inconsistency between Plaintiff's difficulty in attending during the Deines examination, when she was <u>not</u> taking medication for attention/concentration, and the other records reflecting the improvement in Plaintiff's ADHD symptoms with medical management (prescribed Adderall), as well as Plaintiff's many largely normal mental status examination findings throughout the treating record. Tr. 27. The ALJ also relied on the inconsistency between Dr. Deines' reliance on diagnoses of bipolar disorder and borderline personality disorder and the treating notes of Nurse Albertario, who ruled out bipolar disorder and diagnosed only ADHD; importantly, Nurse Albertario's examinations of Plaintiff occurred in Rhode Island after Plaintiff had seemingly stopped all use of cocaine and fentanyl.

With ample substantial evidence to support the ALJ's approach to the Deines report, I do not find any error. Rodriguez Pagan, 819 F.2d at 3 ("We must affirm the Secretary's resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). To hold otherwise, would require the Court to reweigh this evidence, a prohibited judicial exercise that I do not recommend. Diane K. v. Kijakazi, C.A. No. 22-215WES, 2023 WL 8713695, at *5 (D.R.I. Dec. 18, 2023) ("Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner"), adopted by text order (D.R.I. Jan. 23, 2024). Nor is remand compelled because the Dr. Deines and Nurse Albertario opinions are consistent with each other in that both found marked limits in Plaintiff's ability to concentrate and attend. Tr. 26. That an opinion may be consistent with other opinions of record does not in itself undermine an ALJ's finding that it is inconsistent with

---

[13] It is important to emphasize that the non-examining psychologists provided detailed explanations in that they directly and carefully considered the content of Dr. Deines' report and its inconsistency with the rest of the treating record assembled as of the date of their review. Tr. 149, 172-73.

the record as a whole. See Applebee v. Berryhill, No. 1:17-cv-00003-NT, 2017 WL 6523138, at *9-10 (D. Me. Dec. 20, 2017), adopted, 2018 WL 1548684 (D. Me. Mar. 29, 2018), aff'd, 744 F. App'x 6 (1st Cir. 2018) (per curiam).

    **C.**    **ALJ's Treating of Treating Opinion of Nurse Albertario**

After Plaintiff moved back to Rhode Island, Plaintiff initiated mental health treatment with Nurse Albertario on December 15, 2021. Tr. 1992. At intake, Nurse Albertario performed a psychiatric diagnostic evaluation and noted a past diagnosis of ADHD, with observations of current ADHD symptoms (e.g., "could not sit still . . . tangential speech and hyperactivity") as of then untreated.[14] Id. His note includes Plaintiff's report that her ADHD symptoms had responded positively to Adderall when it was prescribed in the past. Tr. 1993. Nurse Albertario started Plaintiff on prescribed Adderall XR. Tr. 1995. By the next appointment, Plaintiff reported "slight reduction of ADHD symptoms." Tr. 1988. At the end of January 2022, Nurse Albertario increased the Adderall dose. Tr. 1986-87. By February 15, 2022, Nurse Albertario noted that, "Adderall XR regimen reported to be effective for concentration and reduction of ADHD symptoms"; his mental status examination observations include "[r]educed ADHD symptoms." Tr. 1981. This improvement was sustained at the next appointment in March, Tr. 1976, with further improvement at the last encounter of record in April 2022. Tr. 1971 ("Patient reports symptoms improvement since last session." "Adherence to medication management appears to have made improvement in patient functioning.").

Two months after his last appointment with Plaintiff, Nurse Albertario completed a short form on which he circled "marked" as to Plaintiff's concentration/attention limits and checked a box indicating that Plaintiff would be off-task 20% of the time. Tr. 2009. The Albertario

---

[14] At intake, Nurse Albertario ruled out bipolar disorder and did not observe PTSD and depressive symptoms. Tr. 1992-93.

12

opinion does not break down into an analysis of specific functions, nor does it provide any explanation, including no indication whether it purports to reflect Plaintiff's ability to concentrate <u>with</u> medication or <u>without</u> medication. The ALJ found this opinion not persuasive because it is unsupported by Nurse Albertario's treating notes, which reflect significant improvement <u>with</u> prescribed medication; the ALJ also notes that Nurse Albertario's "marked" opinion is consistent with that of Dr. Deines, whose report is clear that she was opining based on her observations of Plaintiff <u>without</u> ADHD medication. Tr. 26-27. The ALJ also considered Nurse Albertario's lack of testing to support an opinion regarding the intensity of ADHD symptoms, as well as the opinion's inconsistency with the other evidence of record, particularly Plaintiff's many largely normal mental status examinations. Tr. 26.

For the same reasons why I do not recommend remand for further proceedings regarding the ALJ's approach to the Deines report I also find no error in the ALJ's treatment of the Albertario opinion. To the contrary, I find that the ALJ's decision is consistent with applicable law and well supported by substantial evidence. Having reviewed the entirety of the over-two-thousand-page record and mindful that it is the Court's "job . . . to . . . review the record and determine whether a reasonable mind . . . could accept it as adequate to support [the ALJ's] conclusion," <u>Burton v. Kijakazi</u>, Civil Action No. 21-cv-11916-ADB, 2023 WL 2354901, at *8 (D. Mass. Mar. 3, 2023) (internal quotation marks omitted), I urge the Court to affirm the ALJ's well supported and legally correct decision. <u>See</u> <u>Diane K.</u>, 2023 WL 8713695, at *7.

### D.     Step Five Challenge to Vocational Expert's Testimony

The Court need not linger on Plaintiff's argument that the ALJ failed to sustain the Commissioner's burden at Step Five. In this case, the VE testified to numbers of specific jobs

13

available in the national economy by DOT[15] code and SVP level, Tr. 74, and confirmed (in response to the ALJ's question) that her testimony about available jobs is not inconsistent, but is consistent, with the DOT, except as to certain matters not reflected in the DOT (e.g., tolerable time off-task) as to which the VE explained that she supplemented her answers by relying on "information from the SCO and – as well as Revised Handbook for Analyzing Jobs." Tr. 78-79. Plaintiff asked several follow-up questions about these jobs but asked no questions about the VE's methodology or source. Plaintiff now argues that remand is required because the ALJ failed to ask the VE for methodology and source for the number of jobs to which she opined; Plaintiff does not explain what such follow-up questions might have revealed and why the answers would be material in this case.

This argument fails because the ALJ afforded Plaintiff an opportunity to ask the VE questions, which her attorney did, yet the attorney failed to ask any questions to explore whether the number of job classifications cited are specific to the DOT codes identified and, if they are not, whether and how the inconsistency undermines the ALJ's Step Five finding. Based on settled law in this Court, I recommend that the Court reject this argument based on waiver and affirm the ALJ's Step Five conclusion that work that Plaintiff can perform exists in sufficient numbers in the national economy to support the conclusion of no disability. See, e.g., Isaiah M. v. Kijakazi, C.A. No. 23-00150-MSM, 2023 WL 6229637, at *8 (D.R.I. Sept. 26, 2023) (where VE opined to three jobs identified by DOT code and SVP level and provided job numbers for each position, no error in ALJ's reliance on VE at Step Five; Plaintiff's argument deemed waived due to his counsel's election not to ask follow-up questions during hearing; plaintiff

---

[15] "DOT" refers to the Dictionary of Occupational Titles, which is the Social Security Administration's "primary source of occupational information." Deatrick v. O'Malley, Civil Action No. 23-2218-KHV, 2024 WL 450052, at *3 n.4 (D. Kan. Feb. 6, 2024).

14

"offers nothing beyond speculation at this point in challenging the VE's opinion"), adopted, 2024 WL 1975860 (D.R.I. May 3, 2024); Redley W. v. Kijakazi, C.A. No. 23-00072-WES, 2023 WL 6057447, at *8 (D.R.I. Sept. 18, 2023) ("Case law in this District is clear that a Plaintiff is required to first raise any objection at the administrative level in order to pursue such a claim before the District Court"; Step Five argument fails because it is waived by plaintiff's failure to raise challenge before ALJ), adopted by text order (D.R.I. Oct. 3, 2023); Scott B. v. Kijakazi, C.A. No. 21-481MSM, 2022 WL 17335993, at *9 (D.R.I. Nov. 30, 2022) (VE's testimony regarding specific jobs with specific numbers, "consistent with the DOT and the SCO," is adequately reliable to support Step Five finding; argument challenging Step Five determination is deemed waived due to Plaintiff's failure to raise challenge before ALJ), adopted, 2023 WL 1794576 (D.R.I. Feb. 7, 2023).

## IV.   Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12) be GRANTED.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
May 17, 2024